IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NELSON GALARZA SANTOS** | : | Civil No.  1:20-CV-1562 |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security¹,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.     Introduction

The Supreme Court has underscored for us the limited scope of our substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff challenges the legal sufficiency of an Administrative Law Judge's decision denying his application for disability benefits. Galarza Santos advances a single claim on appeal, arguing that the ALJ failed to sufficiently analyze and reconcile two medical opinions relating to his emotional impairments, both of which found that he could perform simple tasks. Mindful of the fact that substantial evidence, "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that the ALJ adequately addressed these two medical opinions in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

**II.     Statement of Facts and of the Case**

On September 22, 2016, Nelson Galarza Santos applied for disability and supplemental security income benefits under Title II and Title XVI of the Social Security Act, alleging an onset of disability in July of 2016. (Tr. 12). Galarza Santos

was thirty-four years old at the time of the alleged onset of his disability and was defined as a younger worker under the Commissioner's regulations. (Tr. 23). Galarza Santos had prior employment as a car detailer, cleaner, and production worker. (Id.) In his disability application, Galarza Santos alleged that he was disabled due to an array of medical and emotional impairments including carpal tunnel syndrome, epicondylitis,[2] borderline intellectual functioning, depression, panic disorder, alcohol and cannabis abuse, nicotine use disorder, intermittent explosive disorder, and PTSD. (Tr. 15).

On appeal, the only issue before the court relates to the ALJ's analysis of Galarza Santos' emotional impairments. In this regard, the plaintiff has focused upon the opinions of two medical experts, Dr. Santarpia and Dr. Labarbera, and contends that the ALJ failed to adequately address and reconcile these opinions in the disability analysis of this claim. As to this narrowly focused issue, the administrative record reveals that Galarza Santos was evaluated by Dr. Labarbera on November 2, 2016, (Tr. 409-12), and was assessed by Dr. Santarpia on February 27, 2019. (Tr. 592-614).

---

[2] Epicondylitis is commonly known as tennis elbow and is an inflammatory condition of the elbow.

3

Despite the passage of some two and a half years between these two evaluations, both doctors reached generally consistent conclusions regarding Galarza Santos' mental state. Thus, both experts reported the plaintiff's medical history, current functioning, legal history, drug use, and military history in similar terms. (Tr. 409-10, 592-93). Likewise, the mental status examinations of Galarza Santos conducted by Drs. LaBarbera and Santarpia both agreed regarding his speech fluency, thought processes, sensorium, orientation, judgment, attention, and cognitive functioning. (Tr. 410-11, 593-94). Furthermore, Dr. Labarbera and Dr. Santarpia agreed that Galarza Santos was able to understand and follow simple instructions. (Tr. 411, 595). Where the two experts showed some divergence of opinion was on the issue of Galarza Santos' ability to follow more complex directions. Dr. Labarbera concluded in 2016 that the plaintiff experienced marked limitations in this sphere of functioning. (Tr. 411-12). Dr. Santarpia, in contrast, found in 2019 that Galarza Santos was only mildly impaired in this realm of intellectual function. (Tr. 595).

It is against the backdrop of these medical opinions that the ALJ conducted a hearing in this case on January 7, 2019. (Tr. 32-71). The plaintiff and a vocational expert both testified at this hearing. Following this hearing on April 29, 2019, the ALJ issued a decision denying Galarza Santos' application for benefits. (Tr. 9-25).

In that decision, the ALJ first concluded that the plaintiff met the insured status requirements of the Act. (Tr. 15). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Galarza Santos' carpal tunnel syndrome, epicondylitis, borderline intellectual functioning, depression, panic disorder, alcohol and cannabis abuse, nicotine use disorder, intermittent explosive disorder, and PTSD were severe impairments. (Tr. 15). At Step 3 the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 15-17).

The ALJ then reached a residual functional capacity (RFC) assessment for Galarza Santos which concluded that he could perform light work provided that, "[w]ork is limited to simple, routine and repetitive tasks, with no detailed instructions, no production rate or pace work, and involving only occasional interaction with the public." (Tr. 17). This RFC assessment embraced the consensus views of Dr. Labarbera and Dr. Santarpia, who both found that the plaintiff could perform simple tasks, and the ALJ gave both doctors' opinions great weight in the analysis of this claim. (Tr. 22-23). The ALJ also acknowledged that Dr. Labarbera had found that Galarza Santos was markedly limited in his ability to perform complex tasks, an opinion that was not shared by Dr. Santarpia. (Tr. 23). However,

the ALJ's analysis accommodated this discrepancy in expert opinions regarding complex work functioning by limiting the plaintiff to simple tasks. (Id.)

Given this RFC determination, and the limitation of Galarza Santos to simple tasks, the ALJ found that Galarza Santos could not perform his past work but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 23-25). Having reached these conclusions, the ALJ determined that the plaintiff had not met the demanding showing necessary to sustain his claim for benefits and denied this claim.

This appeal followed. (Doc. 1). On appeal, Galarza Santos advances a single argument, asserting that the ALJ's failure to further reconcile the opinions of Dr. Labarbera and Dr. Santarpia compels a remand of this case. Given the highly deferential standard of review which applies here, we disagree and, for the reasons set forth below, the Commissioner's decision will be affirmed.

### III.   Discussion

#### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200

(3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

7

evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

9

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In <u>Hess</u>, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could

function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

      **B.**      **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C.

§1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable

12

impairments, including any non-severe impairments identified by the ALJ at Step 2 of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Colvin, 962 F.Supp.2d 761,778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

14

the importance of medical opinion support for an RFC assessment typically arise where well-supported medical sources have identified limitations supporting a disability claim, but an ALJ has rejected such a determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

  The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

It is against these benchmarks that we assess this appeal.

### C. The Commissioner's Decision Should Be Affirmed.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," Pierce, 487 U.S. at 565, but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154.

Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Galarza Santos was not entirely disabled, but rather could perform light work provided that, "[w]ork is limited to simple, routine and repetitive tasks, with no detailed instructions, no production rate or pace work, and involving only occasional interaction with the public." (Tr. 17). On appeal, Galarza Santos challenges this determination arguing that the ALJ failed to adequately reconcile the medical opinions of Dr. Labarbera and Dr. Santarpia in this decision denying his application for benefits.

We disagree.

On this score, we note that the plaintiff's argument fails to fully take into account the factual context of this case, the content of the two medical opinions, or the RFC determination made here by the ALJ. In this decision the ALJ specifically limited Galarza Santos to simple, routine and repetitive tasks, with no detailed instructions, no production rate or pace work, and involving only occasional interaction with the public. Fairly construed, as to this mental RFC, Dr. Labarbera and Dr. Santarpia were in complete agreement that the plaintiff had the intellectual capacity to perform such simple repetitive work. The disagreement between these experts related to Galarza Santos' ability to perform higher, more complex workplace taskings, but the ALJ carefully limited the plaintiff to those simple tasks

17

where there was a complete medical consensus that Galarza Santos was able to function. Thus, in our view there was no material, prejudicial variance between the two medical opinions regarding the plaintiff's ability to perform the type of work described in this RFC, which required further explanation by the ALJ.

Moreover, given the limited RFC derived by the ALJ in this case, and the agreement among the doctors that the plaintiff could perform the intellectual aspects of this work, we find that the ALJ sufficiently articulated the rationale for this decision. On this score, we remain mindful that:

> [C]onsistent with this deferential standard of review, when we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and emotional components of an RFC, we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation' " for the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, it has been held that an ALJ offers a valid explanation for a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, ...." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

Vargas v. Saul, No. 1:19-CV-1858, 2020 WL 2468401, at *1–2 (M.D. Pa. May 13, 2020). Adopting this pragmatic approach, mindful of the clinical and opinion support for the ALJ's simple tasks RFC, and recognizing that both Dr. Labarbera and Dr. Santarpia agreed that Galarza Santos could perform simple tasks, we find

that the ALJ has provided a valid explanation for this decision which is all that is required under the law. Therefore, there are no grounds to set aside this decision based upon the ALJ's evaluation of these expert opinions regarding the plaintiff's emotional impairments.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

**IV. Conclusion**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: September 30, 2021